## OLE A. FINNES v. SELOVER, BATES & COMPANY.[1]

July 2, 1909.

Nos. 16,191—(129).

**No Evidence to Determine Value.**

In an action for damages for the breach of a contract to sell real estate it appeared that the land was to be sold subject to certain reservations of rights of way for railroads, of coal, oil, and other minerals, and of rights of ingress and egress to prospect for minerals. The court instructed the jury that the measure of damages was the difference between the value of the land as it was contracted to be sold and delivered to him and the amount of the purchase price remaining unpaid, with accrued interest. The evidence related to the value of the land without reference to the reservations. *Held*, that there is no evidence upon which the jury could determine the value of the land as it was to be transferred.

**Same—Burden of Proof.**

The burden was upon the plaintiff to show the value of the land as it was to be transferred to him.

**Same—Point May Be Raised on Appeal.**

It appears from the record that the objections to questions calling for value of the land were indefinite, and insufficient to direct the attention of the court to the question involved; but upon a motion for a directed ver-

[1]Reported in 122 N. W. 174.

dict the position of the defendant was clearly stated. *Held* that, as the court might then have opened the case and permitted additional evidence to be introduced, neither court nor counsel was misled, and the objecting party may avail himself of the fact of the absence of evidence as to the value of the land subject to the reservations.

Action in the district court for Hennepin county to recover $4,377.60 for failure to perform the provisions of two contracts for the sale of real estate. See 102 Minn. 334. The answer alleged default by plaintiff in the performance of the provisions of the contracts. The case was tried before Simpson, J., and a jury which rendered a verdict in favor of plaintiff for $6,173.08. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and new trial granted.

*Arthur W. Selover,* for appellant.

*S. R. Child* and *Benjamin Drake,* for respondent.

ELLIOTT, J.

In this action the plaintiff sought to recover damages for the failure of the defendant to carry out the provisions of two certain contracts for the sale of real estate. The defendant demurred to the complaint, and from an order overruling the same appealed to this court, where the order of the trial court was affirmed. The case was then tried on the merits, and the plaintiff recovered a verdict for the sum of $6,173.08. The present appeal is from an order denying the defendant's motion for judgment notwithstanding the verdict or for a new trial.

The facts and the contracts are fully stated and described in the opinion on the former appeal. 102 Minn. 334, 113 N. W. 883. The appellant now contends (a) that the contract set up in the first cause of action is an option contract; (b) that notice of the termination of these contracts upon lands in Colorado, according to the laws of Minnesota, is not required; and (c) that the Minnesota statutes, if construed to apply to laws outside of the state, would be unconstitutional. These questions were all adjudicated upon the former appeal and will not be reconsidered.

The appellant contends that there is no evidence in the record of

the value of the lands in question, taking into consideration the fact that they were to be conveyed subject to numerous reservations of rights of way for railroads, of coal, oil, and other minerals, of rights of ingress and egress to prospect for minerals, and to remove what might be found at any time thereon. Reservations of this character might substantially reduce the value of the land, and the measure of the damages was the difference between the price which Finnes was to pay therefor and the value of the lands subject to such reservations. The court so instructed the jury. The contracts were in evidence, and disclosed the reservations, and the jury was told that "if you find that his contract was violated, and the plaintiff is entitled to damages for its breach, the measure of that damage would be the value of his contract, which would be the value of the land as it was contracted to be sold and delivered to him, less the amount of the purchase price remaining unpaid, with all accrued interest."

While the charge might have been more specific, it is conceded by the appellant that it states the proper measure of damages; but the claim is that there is no evidence of the value of the land as it was "contracted to be sold." The evidence is all directed to the value of an unqualified fee title of the land, without reference to the reservations. The plaintiff was damaged, if at all, by the breach of the contract to sell the land subject to all the reservations; but he recovered on proof of the value of the land itself, the unqualified fee, something which he did not buy, and which he was not to receive.

The serious question is as to the burden of proof; the respondent contending that in the absence of evidence to the contrary it should be presumed that no oil or minerals existed on the land.

The question of the effect of reservations of this character has generally arisen in actions to compel specific performance of contracts to convey real estate, and the rule is well established that a purchaser cannot be compelled to complete his purchase or accept the title if the land is subject to rights of way or mineral reservations. Maupin, Marketable Title to Real Estate (2d Ed.) § 305. "A right to dig for mines not disclosed would be a ground to set aside the contract at the instance of the purchaser. But purchasers may take the title with a compensation." 1 Sugden, Vendors, p. 473, citing Seaman v. Baudray, 16 Ves. 390.

As stated in Adams v. Henderson, 168 U. S. 573, 580, 18.Sup. Ct. 179, 182, 42 L. Ed. 584: "A good and indefeasible title in fee imports such ownership of the land.as enables the owner to exercise absolute and exclusive control of it as against all others. That the plaintiffs have no such title is too clear to admit of dispute. They hold under the Union Pacific Railroad Company. They accepted a conveyance from that company which expressly reserved, in its favor, and without limit of time, an exclusive right not only 'to prospect for coal and other minerals' under the land in question, and 'to mine for and remove the same if found,' but 'a right of way over and across said lands a space necessary for the conduct of said business thereon without charge or liability for damage therefor.' It does not appear that the railroad company is under any legal obligation to surrender or waive this reservation. The plaintiffs cannot compel it to do so. * * * So that the plaintiffs, in effect, ask that, instead of a good and indefeasible title in fee simple, the defendants shall take and pay for land incumbered with the right of the railroad company for all time, to pass over and across it for the purpose of prospecting for and mining minerals other than coal. A court of equity could not compel the defendants to take and pay for land thus incumbered without making for the parties a contract which they did not choose to make for themselves."

If a title subject to such reservations is not a marketable title, it must be because the land is less desirable with than without the reservations, and, if so, its value is certainly affected thereby. In Winne v. Reynolds, 6 Paige (N. Y.) 407, it was held that a reservation of mineral rights is no objection to the title, if the evidence shows that there is no reason to believe that there are minerals on the land. But no such fact appears in this record, and the plaintiff, having contracted to purchase the land with the reservations, when seeking to recover the value of the lands without the reservations, had the burden of proving that the reservations did not decrease its value.

But it is said that no proper exceptions were taken to enable the appellant to raise this question. The jury seem to have accepted the valuation placed upon the land by the witness Ady, who, after qualifying as an expert, placed the value of one section at from

$5 to $6, and the other at from $6 to $7, per acre. When the witness was asked what, in his judgment, was the value of section 13, township 15, in November, 1906, the question was objected to by the defendant as "incompetent, irrelevant, immaterial, no proper foundation has been laid for the testimony, and, further, it is too indefinite, as it does not name any range." The objection was overruled, and witness answered, "My best judgment would be from $6 to $7 per acre." To the question, "What, in your judgment, was the section in township 16 worth in November, 1906?" the objection was that it was "incompetent, irrelevant, and immaterial to any issue in this case; also, it does not describe any particular land, and that a proper foundation has not been laid."

Objection overruled, and witness answered: "From $5 to $6 per acre." A few moments later the defendant's attorney said: "I want it understood here on the record that we don't want to waive our general objection to the incompetency, irrelevancy, and immateriality, by omitting to object to any one of these questions; otherwise, I will have to object each time. On the question of the value of these lands, we claim all this evidence is irrelevant and immaterial.

"The Court: That may be understood, so far as I am concerned, as going to the whole deposition.

"Mr. Selover: The whole deposition; that general objection.

"Mr. Child: It is no broader than he has made it.

"The Court: No; on the ground that he does not believe that any evidence as to value is material or competent in the case. That particular objection may go to the whole deposition, without his repeating it each time."

It is probable that these objections were not sufficiently definite to direct the attention of the court to the specific objection which the defendant had in mind. The evidence of the value of the land was then received, and, being in the case, the defendant was entitled to controvert it by other evidence. The fact that the defendant, when making its case, offered evidence of the same kind, should not be considered as a waiver of its right to insist upon the objection, if it was properly made. When the evidence was all in, the defendant moved for an instructed verdict, and then made the following statement to the court:

"Another ground for the motion as made is that no damages have been proved in this action, and that the plaintiff has not shown a right to recover any damages whatever from the defendant. I wish the record to show the nature of this claim. Defendant further claims that the evidence of the market value of the lands is entirely irrelevant to any issue in the case, and does not prove that plaintiff has suffered any damage whatever, inasmuch as there is no evidence whatever of the value of these lands at any time subject to all the reservations, restrictions, and exceptions mentioned in the respective contracts, Exhibits A and B.

"The Court: Motion for a directed verdict as to each cause of action by the defendant denied. As to that last question, I think it is a question for the jury, and not for the court, as to the value." The court then instructed the jury as above stated.

At this time the defendant's position was certainly clearly stated, and, if it had then been claimed that the plaintiff had been misled, it was within the power of the court to have opened the case and permitted additional evidence to have been given. The jury had no evidence before it upon which, under the instructions as given, it could properly estimate the value of the land as contracted to be sold, and thus determine the amount of the plaintiff's damages. It fairly appears that defendant preserved its rights. The order of the trial court is reversed, and a new trial granted.

Order reversed and a new trial granted.

START, C. J., and BROWN, J. (dissenting).

The question on which a reversal is ordered was not litigated in the court below, and we therefore dissent.